# Lloyd v. Clarke

C.P. of Delaware County, no. 06-2307.

*Josephine Lloyd,* pro se.

*Robert Ewing,* for appellant.

NILON JR., *J.,* May 22, 2006—This matter came before the trial court after appellee filed for a temporary protection from abuse order on February 27, 2006. The Honorable Maureen Fitzpatrick entered the temporary order. A hearing for a final protection from abuse order was held before the Honorable James F. Nilon Jr. and an order was entered on March 23, 2006.

## FINDINGS OF FACT

Appellee Mother appeared pro se during the hearing and credibly testified that on the night of February 22, 2006 between the hours of 7:30 and 8 p.m., appellee Mother was preparing dinner for her children. Their daughter telephoned appellant and told her father that appellee Mother was cooking Spam for dinner. Appellee heard appellant yelling on the phone at their daughter because of what appellee was serving for dinner. Appellee took the phone from appellant and told him to stop yelling about the food she was preparing. Appellant stated to her that he was coming over to the house to bring the child food. Appellee asked him not to bring over the food because the dinner was already prepared and she had a great deal to do to get the children ready for dinner, ready for school the next day, and help them with homework. Appellant stated that he was coming over anyway, to which appellee responded that she would call the police if he came. (N.T. pp. 7-9.)

Appellant disregarded appellee's request and came to the house and began knocking on the door. Appellee told

him to go home and did not open the door. This angered appellant and caused him to bang harder on the door. Appellee and children became frightened and appellee called the police. Appellant continued to bang on the door harder and harder to the point where he broke the glass in the door. (N.T. p. 9.) Appellee provided pictures of the broken door at trial, which showed a shattered window in the door. The police arrived and appellee made a report of the incident. Appellee testified that she went to the Yeadon District Court the next day to obtain a temporary protection from abuse order from appellant. Appellee testified that she needed a protection order because she was afraid of appellant. (N.T. p. 17.)

Appellee testified to previous incidents during her relationship with appellant when he threatened her while she was pregnant with their son in 2001. (N.T. p. 11.) Appellee further testified about an incident that happened in 2002 when appellant held a gun to appellee's head and threatened to kill her. (N.T. pp. 11-12.) This specific incident was included in appellee's original petition for a temporary protection order and thereby considered by the Honorable Maureen Fitzpatrick when the emergency petition was granted.

Appellant testified and did not deny the fact that he broke the door to appellee's home, stating that he had a religious objection to his children eating pork and wanted to bring a meal for his daughter to eat. Appellant denied that he ever pointed a gun at appellee's head or threatened to kill her. (N.T. p. 39.)

The court considered all of the evidence presented and entered a final protection from abuse order.

## STATEMENT OF MATTERS
## COMPLAINED OF ON APPEAL

Appellant first states in his brief concise statement of matters complained of on appeal that the court erred as a matter of law in determining that appellant's conduct constituted "abuse" as defined in 23 Pa.C.S. §6101 et seq. "In the PFA context, the court's legal conclusions will be reviewed for an error of law or abuse of discretion." *Burke ex rel. Burke v. Bauman,* 814 A.2d 206 (Pa. Super. 2002) citing *Snyder v. Snyder,* 427 Pa. Super. 494, 504, 629 A.2d 977, 982 (1993).

Pennsylvania's Protection From Abuse Act defines "abuse" as:

"The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

"(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

"(2) Placing another in reasonable fear of imminent serious bodily injury.

"(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. §2903 (relating to false imprisonment).

"(4) Physically or sexually abusing minor children, including such terms as defined in chapter 63 (relating to child protective services).

"(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under title 18 (relating to crimes and offenses)." 23 Pa.C.S. §6102(a).

This court notes that although "physical contact may occur, it is not a prerequisite for a finding of abuse under section 6102(a)(2) of the Act." *Fonner v. Fonner,* 731 A.2d 160, 163 (Pa. Super. 1999).

In *Fonner,* appellant and appellee were in the same room when an argument ensued. *Id.* at 162. Appellant touched appellee's arm and was badgering her and being loud. *Id.* When appellee pulled away, appellant punched the wall. *Id.* The Pennsylvania Superior Court found that this behavior constituted abuse as defined by the statute and upheld the trial court's determinations that the appellee's testimony was credible and that the final protection order be granted, despite the fact that there was little physical contact between the parties. *Id.* at 163.

The behavior displayed by the appellant constituted abuse as defined by the statute. The breaking down of the appellee's front door, although not physical abuse of appellee's person, constituted abuse and put the appellee in reasonable fear of imminent serious bodily injury. Appellee asked appellant not to come over and he came

over regardless of this request, her refusal to let him inside the home made him angry and his anger evidenced itself in his breaking down of the door. This behavior put appellee in reasonable fear of imminent serious bodily injury thereby constituting abuse as defined by the statute.

Appellee further testified that appellant held a gun to her head and abused her in the past. "Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." *Raker v. Raker,* 847 A.2d 720, 726 (Pa. Super. 2004), citing *Soda v. Baird,* 411 Pa. Super. 80, 600 A.2d 1274 (1991). It is not an abuse of discretion to consider evidence of abuse that occurred several years prior to the alleged incident when considering the issue of granting a final protection from abuse order. See *Miller on Behalf of Walker v. Walker,* 445 Pa. Super. 537, 551-52, 665 A.2d 1252, 1259 (1995).

In *Raker,* the court found that the parties had a volatile history which involved the appellant making significant threats in the past and considered this in conjunction with the events that occurred immediately prior to the appellee's filing for a temporary protection from abuse order to determine that a final protection from abuse order was appropriate. 847 A.2d at 726. The court explained that the purpose of the Act was to "prevent imminent harm to abused person(s)," and therefore, "some flexibility must be allowed in the admission of evidence relating to past acts of abuse." *Id.,* citing *Snyder,* 427 Pa. Super. at 503-504, 629 A.2d at 982.

Appellee in this case credibly testified that appellant held a gun to her head and abused her physically and emotionally when she was pregnant several years ago. Appellee's demeanor during her testimony was genuinely distraught. She was unable to keep her composure when speaking about the past incidents of abuse and the court found her testimony to be genuinely credible. Appellee's perception of appellant's actions, both past and present, is important to the determination of whether she was in reasonable fear of serious bodily injury. Appellee's past experience with appellant's behavior, particularly the incident during which he placed a gun to her head, made her reasonably fearful that the appellant might inflict serious bodily injury when he began banging on her door and breaking the glass.

Next, appellant lists that this court erred as a matter of law in finding that appellee was not in reasonable fear of injury. Essentially this is the same argument that appellant first raises in his concise matters complained of on appeal, as the definition of abuse under the statute encompasses "placing another in reasonable fear of imminent serious bodily injury." 23 Pa.C.S. §6102(a)(2). Therefore, the court incorporates the positions taken in this opinion in their entirety in response to appellant's second alleged error as a matter of law.

For the foregoing reasons, this court requests that its final protection from abuse order entered in this matter not be disturbed.