J-S58026-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BEVERLY J. VOZAR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EDWARD J. VOZAR, | |
| Appellant | No. 275 WDA 2014 |

Appeal from the Order Entered February 3, 2014
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s): No. 100 of 2014 - D

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:           **FILED SEPTEMBER 03, 2014**

Edward J. Vozar (Husband) appeals from a final protection from abuse (PFA) order entered against him on February 3, 2014.  Husband contends, *inter alia*, that Beverly J. Vozar (Wife) failed to prove she suffered "abuse," as that term is defined by the Protection From Abuse Act (PFAA), 23 Pa.C.S. §§ 6101-6122.  We affirm.

Wife filed a PFA petition against Husband on January 21, 2014. Therein, Wife described Husband's abuse as follows:

> [Husband] always turns off all lights, and creeps around [the] house in dark due to his power-control and rights of using his guns.  [A]nd he removed [the] landline phone and … internet[.] I fell last week in the darkness injuring my left hand [and] wrist. I'm afraid for my life[.]

_____

[*] Retired Senior Judge assigned to the Superior Court.

PFA Petition, 1/21/14, at 5 (emphasis and unnecessary capitalization omitted). When asked to describe "prior acts of abuse" in the petition, Wife stated:

> Abuse must [*sic*] of the marriage – he has hit me most of the years with an open hand, but on Sept[ember] 26, 1991[, he] beat my [*sic*] with his fist [and] knocked out two teeth, and [I] had plastic surgery on [my] open bottom lip! Would wrap chain inside car steering wheels [*sic*] and pedals, and put on padlock, so I had no car. [A]nd [I] ended up losing my job. He would threaten me over the years many, many times with guns. Would play a game he called Russian roulet [*sic*] and ask me[,] "Are you feeling lucky today?["] At times [he] would not let me in my house to sleep. [He] would hold my face [i]n his hands (firmly) and say []"Do you know how easy I could snap your neck?[]" During the times he was cheating he always wished me dead. [He] would say he could shot [*sic*] me as a drive-by and never be [c]aught. Which at the same time he applied and got a permit to carry his hand gun. Neighbors would call Murrysville police many times for his yelling and screaming profanity inside and outside the house. Too much to write on paper[.] So much abuse and control over the past twenty[-]five years out of thirty-five [years] of marriage.

*Id.* at 5-7 (unnecessary capitalization omitted).

After conducting an *ex parte* hearing on Wife's petition, the court issued a temporary PFA order on January 21, 2014. A final PFA hearing was conducted on February 3, 2014. At the close of that hearing, the court entered an order granting wife a final PFA order effective for three months.[1]

_____

[1] That same day, the court also issued an order denying a PFA petition filed by Husband against Wife on January 22, 2014. Husband did not file an appeal from that order, and does not raise any issues in this appeal regarding the denial of his PFA petition.

Husband filed a timely notice of appeal, as well as a timely concise statement of errors complained of on appeal. Herein, he raises four questions for our review:

1. Did [Wife] introduce sufficient evidence of "abuse" as that term is defined at 23 Pa.C.S. § 6102, to justify the granting of a PFA Order in this matter and the eviction of [Husband] from his residence?

2. Did the trial court err as a matter of law in issuing a permanent [PFA] order and evicting [Husband] from his residence on February 3, 2014?

3. Did the trial court err as a matter of law in permitting twenty[-]three[-]year[-]old evidence of prior bad acts to establish "abuse[?"]

4. Did the trial court abuse its discretion in permitting twenty[-]year[-]old … evidence of prior bad acts to establish "abuse[,"] while ignoring clear evidence of [Wife's] motive in the timing of the filing of the PFA petition?

Husband's Brief at 2.

Husband's first two issues challenge the sufficiency of the evidence to support the court's granting Wife a final PFA order; thus, we will address these claims together.[2] In doing so, we are guided by the following:

"When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from

_____

[2] We note that within Husband's first issue, he also claims that the trial court improperly confiscated his firearms in the order granting Wife's temporary PFA petition. **See** Husband's Brief at 8-9. Husband did not raise this issue in his Rule 1925(b) statement; thus, it is waived. Pa.R.A.P. 1925(b)(4)(vii); **see also Commonwealth v. Rolan**, 964 A.2d 398, 409 (Pa. Super. 2008) (citations omitted) (stating "[w]here the trial court orders an [a]ppellant to file a concise statement of matters complained of on appeal under Pa.R.A.P. 1925, any issue not contained in that statement is waived on appeal)".

abuse, we review the evidence in the light most favorable to the petitioner and granting her the benefit of all reasonable inference, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence." ... This court defers to the credibility determinations of the trial court as to witnesses who appeared before it.

*Fonner v. Fonner*, 731 A.2d 160, 161 (Pa. Super. 1999) (quoting *Miller on Behalf of Walker v. Walker*, 445 Pa.Super. 537, 665 A.2d 1252, 1255 (1995)). We also note that the preponderance of evidence standard is defined as the greater weight of the evidence, *i.e.,* to tip a scale slightly is the criteria or requirement for preponderance of the evidence. *Commonwealth v. Brown*, 567 Pa. 272, 786 A.2d 961, 968 (2001), *cert. denied,* 537 U.S. 1187, 123 S.Ct. 1351, 154 L.Ed.2d 1018 (2003).

*Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. 2004).

In particular, Husband challenges the court's conclusion that "abuse" occurred in this case. That term is defined by section 6102 of the PFAA as follows:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood.

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

(2) Placing another in reasonable fear of imminent serious bodily injury.

(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).

> (4) Physically or sexually abusing minor children, including such terms as defined in Chapter 63 (relating to child protective services).
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecution commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a). In regard to this provision, Husband avers that the evidence was insufficient to support the court's conclusion that Wife was placed in "reasonable fear of imminent serious bodily injury" as required by section 6102(a)(2).

We find Husband's argument unconvincing. The trial court concluded that "Wife's testimony during the Temporary PFA Hearing and the Final PFA [Hearing] established 'abuse' under Section 6102(a)(2) and Section 6102(a)(5) by a preponderance of the evidence." Trial Court Opinion (TCO), 3/21/14, at 10. The court emphasized that at the PFA hearing,

> Wife testified that Husband had physically abused her repeatedly over most of the marriage, which abuse resulted in serious bodily injury that required surgical repair and that Husband had continuously displayed a threatening pattern of behaviors to assert his power and control over her. Such threatening pattern of behaviors included incidents such as the 1995 Russian Roulette incident, Husband['s] making threats of shooting Wife before … shooting himself, and Husband['s] wrapping a chain around Wife's steering wheel which prevented her from driving her car. Wife testified that there has never been a period in excess of two or three months without Husband['s] threatening Wife in some manner.

Wife is fifty-eight years old, suffers from arthritis and testified that on January 14, 2014, Husband "set up" Wife to fall by turning off the lights [in the house] and putting an object in the hallway. Wife testified that she had put a night light over by the washer and dryer [where she entered the residence], but when she returned home on January 14, 2013, all the lights were out. She testified that the only working light switch was across the basement by the staircase[,] which would require Wife to walk the length of the basement and feel her way for the railing to get to the working light switch. Wife testified that, although she carries a flashlight with her because Husband continuously turns off the lights, her flashlight was not working. Wife testified that the hallway was always open to where she would go, but on January 14, 2014, Husband pulled either his boots or a container out into her walkway. Wife stated that, due to the conditions "set up" by Husband, she tripped over the objects left in the hallway and she suffered a bruised hand and wrist as a result of the fall.

As stated above, Husband denied deliberately turning off some lights to trip up Wife or to cause her injury on January 14, 2014[;] however he did not deny turning off the lights on [that date]. Husband testified, "I don't deliberately turn off lights. I turn off lights to conserve energy because I have bills." Additionally, while Husband admitted that he had a gun at the time Wife filed for the PFA, he denied ever threatening Wife with the gun, playing a game of Russian Roulette with Wife, creeping around the house or threatening Wife.

The parties' adult daughter also testified during the Final PFA Hearing. While this Court considered [the daughter's] testimony regarding whether she witnessed any abuse or threats of abuse initiated by either party, when [the daughter] was asked by this Court, "have you ever witnessed your mother physically abuse your father or threaten any kind of physical abuse?" [The daughter] stated, "No." This Court gave [the daughter's] testimony due weight considering that [the daughter] testified that she never witnessed any physical abuse by either party and she provided no testimony that either party threatened the other with threats of physical abuse. There was no testimony offered by [the daughter] that she was present for the specific incidents of abuse identified in Wife's Petition. Therefore, her testimony was not helpful in determining whether the incidents of abuse or the pattern of abuse alleged in Wife's Petition occurred. Further, [the daughter's] testimony did not

diminish Wife's testimony or detract from Wife's credibility. [The daughter's] testimony actually supported Wife's contention that Husband never engaged in any of the "abuse" in front of the children.

*Id.* at 10-12 (footnoted citations to the record omitted).

After summarizing the testimony presented by the parties and their daughter at the PFA hearing, the trial court stated that it found that "Wife's testimony was credible and that Husband's testimony, inasmuch as he denied Wife's allegations, was not credible." *Id.* at 12. The court also declared that,

after considering Wife's testimony regarding both present and past acts of abuse, this Court concluded that Wife had established by a preponderance of the evidence that she suffered from abuse as defined by the PFA[A] under sections 6102(a)(2) and [](a)(5) and that her fear was reasonable. Reviewing the record in the light most favorable to Wife and granting her the benefit of all reasonable inferences, this Court found that there was sufficient evidence of "abuse."

*Id.*

After reviewing the record of the final PFA hearing, we agree with the trial court that the evidence was sufficient to establish "abuse." While Husband emphasizes that there was no physical contact on January 14, 2014, the definitions of abuse set forth in sections 6102(a)(2) and (a)(5) do not require physical contact. Wife's testimony that Husband engaged in a threatening and assaultive course of conduct over the long span of their marriage, and that on January 14, 2014, he formulated and carried out a plan to cause Wife to fall in their home, supported the court's conclusion that

- 7 -

Wife reasonably feared bodily – or serious bodily – injury. Thus, the evidence was sufficient to support the court's finding of abuse.

Husband next contends that the court improperly admitted and considered evidence of prior incidents of abuse dating back to 1991 and 1995. Husband specifically refers to Wife's testimony that in 1991, Husband punched her in the face, knocking out two of her teeth and causing her to need surgery to repair her lip. *See* N.T. PFA Hearing at 14-17. She also testified that in 1995, Husband forced her to play Russian Roulette. *Id.* at 6. Husband claims that evidence of these incidents was "too old, stale and remote to be of any relevance in the 2014 PFA proceeding." Appellant's Brief at 12.

In assessing this claim, we begin by noting that "questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court, and may be reversed on appeal only when a clear abuse of discretion is apparent." *Snyder v. Snyder*, 629 A.2d 977, 982 (Pa. Super. 1993) (applying this standard of review in the PFA context). Here, the trial court explained its decision to admit, and consider, Husband's prior abuse of Wife, stating:

> Husband … contends that this [c]ourt erred in admitting evidence of past abuse that occurred more than twenty years ago. Husband offers no statutory or case law supporting his contention and, [to] the contrary, in *Snyder*…, the Superior Court held that a person filing a [PFA] petition will not be "rigorously limited to the specific allegations of abuse found in the Petition." [*Id.* at] 981…. The [C]ourt further held that, in light of the purpose of the Act to "prevent imminent harm to abused person(s)," some flexibility must be allowed in the

admission of evidence relating to past acts of abuse. ***Id.*** at 982. In ***Miller on Behalf of Walker***…, the court reasoned:

> [I]n light of the protective purposes of the act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order. If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony. However, it was not an abuse of discretion for the trial court to hear the evidence. Past abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order.

> 665 A.2d [at] 1259…. While this [c]ourt did consider Wife's allegations of past abuse in making its determination as to whether Wife presently had a reasonable belief of imminent serious bodily injury, this [c]ourt weighed such allegations of past abuse appropriately. This Court had an opportunity to hear from Wife on two separate occasions, [and] during one of such occasions, Wife was cross-examined extensively about her allegations of abuse[.] … [T]his Court found Wife to be very sincere and credible and found that Wife's fear of Husband was reasonable.

TCO at 13.

Based on the court's rationale, we ascertain no abuse of discretion in its decision to admit the evidence of Husband's prior abuse of Wife, nor in the court's careful consideration thereof. Clearly, the court was aware of the remoteness of those incidents, and did not issue the PFA order solely based on this evidence. Instead, the court appropriately weighed Wife's testimony regarding Husband's prior abuse in assessing whether her fear of imminent serious bodily injury was reasonable. Accordingly, Husband's third issue is meritless.

In Husband's fourth claim, he argues that the trial court abused its discretion by "ignoring clear evidence of bias, interest and motive of … [W]ife in the timing of this PFA petition."[3]  Specifically, Husband explains that divorce proceedings had been initiated, and were ongoing, at the time Wife filed her PFA petition.  He contends that "[W]ife filed this PFA after unsuccessful attempts in Domestic Relations to obtain spousal support from [Husband]."  Husband's Brief at 14.  Husband claims that "[t]he trial court completely ignored this obvious motive in manipulating the PFA system to gain an eviction and support [that Wife] could not secure in Domestic Relations."  *Id.*

In rejecting Husband's contention, the trial court emphasized that,

> Husband's counsel was … permitted to cross-examine Wife regarding her alleged bias and interest in filing for and securing a PFA Order and Husband's counsel did so extensively.  …  This [c]ourt did consider all testimony and evidence presented during the Final PFA Hearing and[,] based upon the testimony of the witnesses, this [c]ourt determined that Wife's interest in petitioning for and securing the PFA was genuine and unrelated to the divorce proceedings.  This [c]ourt is perplexed by Husband's allegations that this [c]ourt ignored any evidence in making its determinations with respect to whether Wife's allegations met the requirements of "abuse" as defined by the PFA statute[,] especially because this [c]ourt did not restrict Husband's ability to present the evidence he now contends this [c]ourt ignored.

_____

[3] We note that Husband did not set out this issue separately in the argument portion of his brief, instead including it within his discussion of issue three. *See* Husband's Brief at 13.

TCO at 13. The trial court's rationale is sound. Husband was permitted to cross-examine Wife regarding her motives for filing the PFA. **See** N.T. PCRA Hearing at 34-41. His claim that the court "ignored" this evidence is purely speculative and unsupported by the record. Accordingly, Husband's final issue is meritless.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/3/2014